**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01875-NYW

DANIEL ABDYRAKHMANOV,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ, in his official capacity,
DAVID VENTURELLA, in his official capacity,[1]
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE, in his official capacity,

     Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"). [Doc. 1]. Respondents have responded to the Petition, [Doc. 7], and Petitioner has filed a reply, [Doc. 14]. For the reasons set forth in this Order, the Petition is **GRANTED in part**.

**BACKGROUND**

Petitioner Daniel Abdyrakhmanov ("Petitioner" or "Mr. Abdyrakhmanov") is a citizen of Kyrgyzstan who entered the United States in 2023. [Doc. 1 at ¶ 1]. He was granted humanitarian parole and was authorized to enter and reside in the United States through August 3, 2025. [*Id.* at ¶¶ 1–2]. In 2024, he filed an application for asylum and withholding

---

[1] Pursuant to Fed. R. Civ. P. 25(d), George Valdez and David Venturella are automatically substituted in as Respondents as the current office holders.

of removal, and that application remains pending. [*Id.* at ¶ 4].

On April 25, 2026, Petitioner was taken into ICE custody during a routine traffic stop. [*Id.* at ¶ 6]. He is currently detained by ICE at the Denver Contract Detention Facility. [*Id.*]. He has not been provided a bond hearing or an individualized custody determination. [*Id.* at ¶ 13].

Petitioner contends that Respondents are improperly detaining him under 8 U.S.C. § 1225(b). [*Id.* at ¶ 27]. He argues that his detention is actually governed by 8 U.S.C. § 1226(a), which requires that he be given a bond hearing. [*Id.* at ¶¶ 27–28, 37, 41].

Mr. Abdyrakhmanov asserts three claims for relief: (1) a claim under the Immigration and Nationality Act ("INA") arguing that his detention without a bond hearing violates the INA, [*id.* at ¶¶ 64–69]; (2) a claim asserting that Petitioner's detention without a bond hearing violates his Fifth Amendment due process rights, [*id.* at ¶¶ 70–75]; (3) a claim arguing that Petitioner's detention violates the Suspension Clause, [*id.* at ¶¶ 76–79]. He asks the Court to order Respondents to "immediately release [him] from immigration detention under reasonable conditions of supervision." [*Id.* at 25]. In the alternative, he asks the Court to order Respondents to provide him a bond hearing within five business days. [*Id.*].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484

(1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**ANALYSIS**

Mr. Abdyrakhmanov argues that Respondents purport to detain him pursuant to 8 U.S.C. § 1225(b).  [Doc. 1 at ¶¶ 65–66].  He argues that this is improper because his detention should be governed by § 1226(a), and that he is entitled to a bond hearing under this statute.  [*Id.* at ¶¶ 12, 27, 69].  Respondents counter that Petitioner is subject to mandatory detention under § 1225(b)(2)(A).  [Doc. 7 at 4–5].

The Court first discusses the applicable statutory framework before turning to the Parties' substantive arguments.

**I.      Statutory Framework**

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'"  *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303).  This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here.  *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)).  Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme."  *Rodriguez v.*

3

*Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).   Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297.  This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings.   8 U.S.C. § 1225(b)(2)(A) (emphasis added).[2]  Under § 1225(a)(1), an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Generally, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).   "The only exception to the mandatory detention required by section 1225(b) is that 'applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."'"   *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 364 (W.D.N.Y. 2025) (quoting *Jennings*, 583 U.S. at 287); *see also* 8 U.S.C. § 1182(d)(5)(A).

---

[2] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution"). Respondents do not argue that Petitioner is detained pursuant to § 1225(b)(1), *see* [Doc. 7 at 5], so the Court does not substantively address detention under this subsection.

This Court has previously concluded that the plain language of § 1225's "seeking admission" language "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025). "The use [of] the present participle in § 1225(b)(2)(A) 'implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026)). Therefore, Section 1225(b)(2)(A)'s detention framework does not apply to "noncitizens who are just 'present' in the country, who have been here for years upon years and never proceeded to obtain any form of citizenship." *Id.* (quoting *Lopez-Campos*, 797 F. Supp. 3d at 781 (cleaned up)). In *Loa Caballero*, because the petitioner had been present in the United States for several years, he "was not seeking lawful entry into the United States at the time he was detained—he was already here." *Id.* at *7. "He was thus not 'seeking admission' and [was] not subject to § 1225(b)(2)(A)'s mandatory detention provision." *Id.* The Court has reaffirmed this interpretation on many occasions. *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *4 (D. Colo. Jan. 6, 2026); *Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at *4 (D. Colo. Feb. 26, 2026).

## II.    Petitioner's Detention

Petitioner argues that the above analysis applies to this case and leads to the conclusion that he is detained under § 1226(a), not § 1225(b). *See* [Doc. 1 at ¶¶ 32–41]; *see also* [*id.* at ¶ 66 ("Once parole was granted and jurisdiction vested with the Immigration Court, Petitioner ceased to be a noncitizen 'seeking admission' within the

meaning of § 1225(b).")].

In Respondents' view, this case "is unlike many of the immigration habeas petitions that have been filed in this district in recent months involving individuals who entered the United States without inspection" because Petitioner was originally granted parole upon entry into the United States, but his parole has ended.  [Doc. 7 at 2].

First, Respondents focus on the language of § 1225.  [*Id.* at 4].  They assert that, because Petitioner was never formally admitted to the United States, "he plainly falls into the statutory definition of an 'applicant for admission.'"  [*Id.*].  And "[a]s an applicant for admission," Respondents contend, "Petitioner is subject to detention under 8 U.S.C. § 1225(b)."  [*Id.* at 4–5].

Respondents' argument, however, ignores that the statute mandates detention of applicants for admission who are actively *seeking admission*.  8 U.S.C. § 1225(b)(2)(A).  And Respondents' suggestion that all applicants for admission are necessarily "seeking admission" under the statute, *see* [Doc. 7 at 5–6], ignores well-established canons of statutory interpretation.  Indeed, this Court has already rejected this same argument:

> [T]he "presumption of consistent usage and the meaningful-variation canon" instructs that "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings."  *Pulsifer v. United States*, 601 U.S. 124, 149 (2024).  "[B]y treating the terms 'applicant for admission' and 'alien seeking admission' as synonymous, Respondents' interpretation violates the principle that Congress is presumed to have acted intentionally in choosing different words in a statute, such that different words and phrases should be accorded different meanings."  *Lopez Benitez*, [795 F. Supp. 3d at 488].
>
> Moreover, courts avoid interpreting statutes in a way that "makes any part superfluous."  *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996).  If *all* applicants for admission are necessarily "seeking admission" under the statute, then the "seeking admission" language in § 1225(b)(2)(A) would be redundant and superfluous.  *See* 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration

officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding"). If all "applicants for admission" were "seeking admission" to the country, "there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, [795 F. Supp. 3d at 488]; *Hernandez Marcelo* [*v. Trump*, 801 F. Supp. 3d 807, 819 (S.D. Iowa 2025)] (collecting cases ruling similarly). "The canon against surplusage indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017).

*Loa Caballero*, 2025 WL 2977650, at *6–7 (citation alterations added). This Court continues to hold that the phrase "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* at *6. Here, Petitioner entered the United States in 2023 and thereafter "maintained a fixed residence in Illinois." [Doc. 1 at ¶¶ 1, 5, 7]. He was not seeking admission into the United States at the time he was detained.

Alternatively, Respondents contend that even if the Court interprets § 1225(b) in this way, "that provision still would apply to Petitioner, given how he entered the United States." [Doc. 7 at 6]. They assert that when Mr. Abdyrakhmanov entered the United States and presented himself at a port of entry, he was "indisputably seek[ing] entry." [*Id.*]. In their view, even though Petitioner was paroled into the country and has been here for several years, the expiration of his parole put him back in the same position he was in when he first entered the country. [*Id.* at 6–7]. They argue that "Congress has required that individuals who are granted temporary parole return to the status they previously held when that parole ends," so when Petitioner's parole ended, he "returned to his status of 'applicant for admission' or 'arriving alien'" under § 1225(b). [*Id.* at 7 (quotation omitted)]. Specifically, Respondents rely on 8 U.S.C. § 1182(d), which

7

provides that humanitarian parole

> shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States*.

8 U.S.C. § 1182(d)(5)(A) (emphasis added).

The problem with Respondents' argument is that § 1182(d)(5)(A) "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi v. Francis*, No. 25-cv-10029-LJL, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). It states that the noncitizen shall "forthwith return or be returned to the *custody* from which he was paroled." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Respondents do not offer any argument as to the meaning of the word "custody" as used in this provision or explain why, in their view, "custody" is synonymous with "status." *See* [Doc. 7]. Numerous courts across the country have found that "custody," as used in § 1182(d)(5)(A), does not mean "physical confinement" or "detention," but instead "means legal control or supervision." *Guzman v. Bondi*, No. 26-cv-01250-KSH, 2026 WL 1534682, at *5 (D.N.J. June 1, 2026); *see also, e.g.*, *Qasemi*, 2025 WL 3654098, at *10; *Olimov v. Jamison*, No. 2:26-cv-00532-JDW, 2026 WL 596155, at *5 (E.D. Pa. Mar. 3, 2026); *Hernandez Villasmil v. Blanche*, No. 9:26-cv-00713-MAD, 2026 WL 1235068, at *5 (N.D.N.Y. May 5, 2026); *cf. Clark v. Martinez*, 543 U.S. 371, 385 (2005) ("[N]othing in [§ 1182(d)(5)(A)] affirmatively authorizes detention."). "[Section] 1182(d)(5)(A)'s mandate that an immigrant return to 'the custody from which he was paroled' simply means that the immigrant must return to the 'care and control' of the Department of Homeland Security." *Ontiveros v. Warden Corr. Ctr. of Nw.*

*Ohio*, No. 3:26-cv-00632-SL, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026).

Nor do Respondents engage with the statutory language stating that a former parolee's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). "All the term 'applicant for admission' requires is presence in the United States without admission." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025); 8 U.S.C. § 1225(a)(1). "Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio*, 811 F. Supp. 3d at 302; *see also Matkarimov v. Noem*, No. 26-cv-00048-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026) (same); *Araque-Marquez v. Olson*, No. 26-cv-00084-DLB, 2026 WL 836121, at *3 (E.D. Ky. Mar. 26, 2026) ("It follows logically that once [the noncitizen's] parole expired, yet he remained in the country undetected, he would have similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts."). And any other applicant for admission who has been present in the United States for a number of years, like Mr. Abdyrakhmanov, "would be subject to detainment under the provisions of Section 1226." *J.H.F. v. Arteta*, No. 26-cv-04076-AT, 2026 WL 1724066, at *5 (S.D.N.Y. June 14, 2026) (quotation omitted); *see also Quispe-Ardiles*, 2025 WL 2783800, at *5 (recognizing that § 1226 provides the "default" rule).

Respondents cite, but do not raise developed arguments under, *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). *See, e.g.*, [Doc. 7 at 3, 8, 10].

In *Thuraissigiam*, the petitioner challenged his expedited removal proceedings on due process grounds, arguing he was entitled to judicial review of the credible-fear proceeding. 591 U.S. at 138. The Supreme Court rejected this challenge on the basis that noncitizens "seeking initial entry," like the petitioner, are only entitled to the due process rights expressly conferred by Congress. *Id.* at 138–40. The Supreme Court also rejected the petitioner's argument that he was entitled to greater process because he had entered the United States and "ma[de] it 25 yards into U.S. territory before he was caught." *Id.* at 139. It stated, in dicta, that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Id.* (quotation omitted). Courts have referred to this rule as the "entry fiction" doctrine. *See, e.g.*, *Polanco v. Fields*, No. 26-cv-00059-DLB, 2026 WL 1134862, at *9 (E.D. Ky. Apr. 27, 2026); *Gagiev v. Rose*, No. 26-cv-00169, 2026 WL 657739, at *3 & n.4 (E.D. Pa. Mar. 9, 2026); *Luis Alberto R.C. v. Murray*, 817 F. Supp. 3d 917, 923 (E.D. Cal. 2025).

Respondents do not raise arguments under the "entry fiction" doctrine or affirmatively argue that *Thuraissigiam* applies in the context of this case, *see* [Doc. 7], and the Court concludes that it does not. "*Thuraissigiam* stands for the limited principle that those 'at the threshold of initial entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 313–14 (quoting *Thuraissigiam*, 591 U.S. at 107). In *Thuraissigiam*, the petitioner attempted to distinguish himself as someone not at the threshold of initial entry because he was within the borders of the United States when he was detained. 591 U.S. at 139. In contrast, Mr. Abdyrakhmanov was paroled into the

United States and lived and worked in the country for nearly three years before he was detained.  [Doc. 1 at ¶¶ 1, 5, 7].  He therefore "cannot be analogized to a person stopped within 25 yards of the border."  *Rodriguez-Acurio*, 811 F. Supp. 3d at 314.  Moreover, *Thuraissigiam* "concerns the right to additional due process sought over admission determinations."  *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 489 (E.D.N.Y. 2025) (quotation omitted); *see also Thuraissigiam*, 591 U.S. at 140 (holding that a person "has only those rights *regarding admission* that Congress has provided by statute" (emphasis added)).  "It does not address the due process rights of a noncitizen to remain free once released," *Hyppolite*, 808 F. Supp. 3d at 489 (quotation omitted), nor does it address the statutory question presented by Petitioner here.

Even setting aside these distinctions, other courts have persuasively explained why "entry fiction" "ends once a person has been living in the country after parole expires." *Cabrera Martinez*, 816 F. Supp. 3d at 366.  The Court finds the *Cabrera Martinez* court's analysis persuasive and adopts it here.  Under § 1182, a person who stays in the country past their period of parole "is deemed to be *unlawfully present* in the United States."  8 U.S.C. § 1182 (a)(9)(B)(ii) (emphasis added).  Based on this language, "the 'entry fiction'—which deems someone on parole not to be legally 'present' in the country—must end when someone overstays 'the period of [parole] authorized by the Attorney General.'" *Cabrera Martinez*, 816 F. Supp. 3d at 367.  "It defies logic to deem someone simultaneously awaiting entry 'at the border' and 'present' inside the country."  *Id.*

"[F]or someone who is 'unlawfully present' because his parole has expired and he has been living in the country without parole for a period of time, that person's detention must 'be dealt with in the same manner as' any other noncitizen 'already present in the

11

United States'" i.e., under § 1226(a).  *Id.* (footnote omitted) (quoting *Jennings*, 583 U.S. at 303); *see also* 8 U.S.C. § 1182(d)(5)(A); *Matkarimov*, 2026 WL 700072, at *2 ("It follows logically that once Petitioner's parole expired, yet he remained in the country undetected, he would have similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.").  Mr. Abdyrakhmanov had been present in the United States for nearly three years at the time he was detained by ICE.  [Doc. 1 at ¶¶ 1, 6].  He was not "seeking admission" at the time he was detained—he was already here.  *Cf. Rodriguez-Acurio*, 811 F. Supp. 3d at 307 ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole.").  Consistent with this Court's prior orders and the decisions of several other courts in this District,[3] the Court finds that Mr. Abdyrakhmanov's detention is governed by § 1226(a).  And because Respondents have not provided the bond hearing required by statute, Petitioner's detention without a bond hearing violates the INA.

The Petition is therefore **GRANTED** with respect to Petitioner's statutory claim.  The Court need not address Petitioner's alternative constitutional claims.

## III.    Appropriate Remedy

Petitioner asks the Court to order Respondents "to immediately release Petitioner

---

[3] A number of courts in this District have concluded that § 1226(a) governs the detention of a person paroled into this country who was later detained after their parole had ended. *See, e.g.*, *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559, at *5 (D. Colo. Mar. 4, 2026) (Brimmer, J.); *Khubiev v. Baltasar*, No. 25-cv-03955-STV, 2026 WL 864237, at *6 (D. Colo. Mar. 30, 2026) (Varholak, M.J.); *Rabaev v. Baltazar*, No. 26-cv-00811-SBP, 2026 WL 911279, at *3 (D. Colo. Apr. 2, 2026) (Prose, M.J.); *Pulido v. Baltazar*, No. 26-cv-01818-CNS, 2026 WL 1425034, at *2 (D. Colo. May 21, 2026) (Sweeney, J.,).

from immigration detention under reasonable conditions of supervision." [Doc. 1 at 25]. However, because § 1226(a) "does not require release," but instead "provides DHS the discretion to grant an alien release on bond," *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025), the Court finds it more appropriate to order Respondents to provide Petitioner with a bond hearing before an immigration judge, who "is better suited to consider whether Petitioner poses a flight risk and a danger to the community," *Loa Caballero*, 2025 WL 2977650, at *9.

Contemplating this relief, Mr. Abdyrakhmanov asks the Court to order the Government to bear the burden of justifying his detention by clear and convincing evidence. [Doc. 1 at 25]. His request, however, is not accompanied by any supporting argument. *See* [*id.*]. For their part, Respondents do not raise any arguments as to which party should bear the burden or what the evidentiary burden should be. *See* [Doc. 7].

Following the weight of authority in this District, the Court has previously required the Government to bear the burden of proof at a § 1226(a) bond hearing where, as here, the petitioner is initially erroneously detained under § 1225. *See Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2026); *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026); *see also, e.g.*, *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026) ("[T]he weight of authority in this District is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." (cleaned up) (collecting cases)). *But see De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *4 (D. Colo. Feb. 17, 2026) (declining to place burden on the Government in a similar case). The Court also concurs with the decisions concluding that "the clear and convincing

standard that generally applies to civil detention where liberty is at stake is appropriate here as well." *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) (quotation omitted); *see also Martinez Escobar*, 2026 WL 503313, at *5 (collecting cases).

Accordingly, Respondents are **ORDERED** to provide Mr. Abdyrakhmanov a bond hearing no later than **June 30, 2026**.  At the bond hearing, the Government shall bear the burden of justifying Petitioner's detention by clear and convincing evidence.  If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention.  On or before **July 7, 2026**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; and (2) whether any additional proceedings in this matter are required.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)   The Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 [Doc. 1] is **GRANTED in part**;

(2)   Respondents shall provide Petitioner a bond hearing no later than **June 30, 2026**.  At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified.  If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

14

(3)    On or before **July 7, 2026**, the Parties shall file a joint status report concerning

(1) the results of any bond hearing that was conducted or, if no hearing was

held, advise the Court of the date Petitioner was released from custody; and

(2) whether any additional proceedings in this matter are required.

DATED:  June 23, 2026                              BY THE COURT:

Nina Y. Wang
United States District Judge